IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH K. MILLER | ) |
| | ) |
| v. | ) No. 3:12-0752 |
| | ) Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) |

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 15). Plaintiff has further filed a reply brief in support of her motion (Docket Entry No. 18). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I. Introduction

Plaintiff filed her applications for benefits on July 21, 2008, alleging an onset

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

of disability as of November 10, 2007, due to "[d]iabetes, [high blood pressure], back, heart damage, depression." (Tr. 124-35, 161) For purposes of her application for disability insurance benefits, plaintiff last met the insured status requirements of the Social Security Act on March 31, 2011. Plaintiff's applications were denied at the initial and reconsideration stages of review before the state agency, whereupon plaintiff filed a request for *de novo* review by an Administrative Law Judge (ALJ). Plaintiff appeared for a hearing before the ALJ on February 8, 2011, at which hearing she was represented by counsel and gave testimony. (Tr. 27-50) Testimony was also received at the hearing from an independent vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until February 25, 2008, when he issued a written decision in which he found that plaintiff was not disabled. (Tr. 12-20) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since November 10, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus; diabetic retinopathy; obesity; adjustment disorder; and drug and alcohol abuse in remission (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she cannot carry out complex or

detailed instructions, cannot maintain attention or concentration for more than two hours without interruption, and cannot have more than occasional interaction with others.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant, born on February 20, 1963, was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited (8th grade) education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a "disability" as defined in the Social Security Act from November 10, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-16, 18-19)

On June 16, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-7), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence,

based on the record as a whole, then those findings are conclusive.  Id.

## II.  Review of the Record

The following record review is taken from plaintiff's brief, Docket Entry No. 12-1 at 3-5:

Plaintiff Deborah Miller was born on February 20, 1963, and was 44 years old on her alleged disability onset date, November 10, 2007. Tr. 18, 124. As such, she was a younger individual from the time of the alleged onset date through the date of the ALJ's decision. See 20 C.F.R. § 416.963.

The Plaintiff was receiving treatment for hypertension, diabetes, obesity, depression, back pain, and perirectal abscess dating back to the 2004-2005 period. Tr. 241-278. The Plaintiff had recurrent perirectal abscesses in 2007 and 2008. Tr. 279-452. She also received treatment related to hypertension and back pain (Tr. 279-452), as well a hospitalization related to abdominal pain possibly related to a lesion or abdominal mass. Tr. 453-495.

The more recent treatment notes from 2009-2010 document the Plaintiff's treatment related to depression, obesity, hypertension and uncontrolled diabetes with neuropathic pain of the feet and legs. Tr. 526-589. The Plaintiff's blood sugar was frequently uncontrolled and she frequently complained of lower extremity pain and numbness and/or tingling. Tr. 526-589. The Plaintiff was also treated for recurrent staph infections with diagnosis of MRSA. Tr. 556.

In March 2009, Plaintiff presented to the emergency department complaining of left foot pain, and she was diagnosed with a closed fracture of the third distal phalanx of the foot. Tr. 771- 790. She returned a few days later with exacerbation of her pain after being on her

feet while reported at a job. Tr. 772. Around this same time, in October 2008 and January, May and June 2009, the Plaintiff was in the emergency department again for recurring abscesses on her buttocks, legs and upper body. Tr. 755-796, 832-839.

The Plaintiff was admitted with atypical chest pain radiating down the left upper extremity in August 2010. Tr. 627-637. In September 2010, the Plaintiff presented to the emergency department with right heel pain. Tr. 600-602. A small inferior calcaneal spur was revealed on x-rays. Tr. 603-604.

Throughout these treatment records, there is documentation of the Plaintiff's recurring vulvar lesions and/or vaginal mass. See Tr. 241-495, 526-589. In October 2009, the Plaintiff returned with one year history of vulvar mass with persistent symptoms, and records reveal a hard, plaque-like area of vulvar dysplasia and a small plaque-like lesion. Tr. 671-672. Due to Plaintiff's severe vulvar dysplasia and possible microinvasive cancer of the vulva, Dr. Numnum planned a right vulvectomy to be performed as soon as possible. Tr. 670.

In March 2010, the Plaintiff presented with complaints of a severe headache. Tr. 684. Her discharge diagnoses were headache, cough, diabetes, coronary atherosclerosis, and hypertension. Tr. 698. The Plaintiff also presented with complaints of face and tooth pain, and multiple times with back pain with radiation to her buttocks. Tr. 700-747. On August 18, 2009, x-rays of the Plaintiff's lumbar spine revealed mild degenerative changes, especially at L1-2 with anterior lipping noted. Tr. 746.

The most recent records from Rutherford County Health Department document the Plaintiff's complaints of leg and foot pain and numbness due to diabetic neuropathy. Tr. 840-848. These notes state that her neuropathy will not improve as long as her diabetes is out of control. Tr. 842. While the records do show the Plaintiff ran out of her medications for a few

weeks, the Plaintiff has alleged that this is due to financial reasons. In addition, these updated records show the Plaintiff's recurrent lesion near her rectum. Tr. 844.

The Plaintiff appeared at the hearing held on February 8, 2011, and testified regarding the impairments noted above, as well as her limited visual acuity due to diabetic retinopathy. The Plaintiff testified that she has diabetes, vulvar cancer, recurrent abscesses, and chronic pain in her legs, ankles, heels, elbows and back. She has to rest and/or lie down with her legs elevated for about half of the day, she has limited activities, she lives with a friend and does no housework, and she is depressed and frequently does not want to go outside. Tr. 25-50. She testified that she was fired from her last real job at Burger King for difficulties performing the job, and her impairments and resulting symptoms and limitations had been getting worse and worse over the last several years. Tr. 25-50. She also testified that she had no insurance, had difficulty affording some of her treatment, and had difficulty affording and/or obtaining transportation to the treating specialist regarding her vulva cancer. Tr. 33-34.

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th

Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in failing to conduct a function-by-function analysis as part of his RFC determination, as required by SSR 96-8p. The Sixth Circuit has examined this requirement, finding as follows:

> Although SSR 96–8p requires a "function-by-function evaluation" to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged. *See Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000). [Additional citations omitted.]
>
> In *Bencivengo,* the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo,* slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002).

In the instant case, plaintiff asserts two items which are alleged to be inconsistent with the ALJ's determination of her RFC, and so required the function-by-function evaluation missing here in order to provide substantial evidentiary support for that RFC determination. First, plaintiff asserts that there are inconsistencies with regard to her physical limitations, in that the non-examining state agency consultant assigned limitations to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and the consultative examiner found a reduced range of motion of the shoulders and back, but none of these limitations were addressed by the ALJ in his RFC determination. However, there is no evidence or argument that such postural limitations (or findings that might indicate such

9

work-related limitations) would be expected to impact the sedentary work to which plaintiff was limited in the RFC finding. In fact, the physicians who assigned such limitations or recorded such findings did not limit plaintiff to sedentary work, but opined that she could perform work at the light or medium exertional levels in view of the postural and strength limitations which they applied. The ALJ considered those assessments, but found that plaintiff had a lower exertional ability level in light of her partially credible testimony. On this record, the undersigned finds that any error in the ALJ's failure to make explicit his function-by-function evaluation is harmless.

Similarly, with regard to her mental functioning, plaintiff argues that the ALJ failed to include any limitations in his RFC finding regarding her ability to handle stress in a work environment, despite the fact that the consultative examiner assessed that "[s]he likely would have mild, and sometimes moderate, difficulty tolerating stress[.]" (Tr. 507) However, the ALJ noted these mild to moderate limitations and found them consistent with his RFC finding (Tr. 18), which included restrictions against complex or detailed instructions and more than occasional interaction with others. (Tr. 16) No further, function-by-function analysis is required on this front.

Plaintiff next takes issue with the ALJ's finding of severe impairments at the second step of the sequential evaluation process, arguing that the ALJ erred in failing to find severe her "chronic back pain and degenerative disc disease of the lumbar spine, foot pain status post fractures phalanx with a heel spur, MRSA and recurrent abscesses on her buttocks, recurrent vaginal lesions and severe vulvar dysplasia with possible microinvasive cancer of the vulva requiring a right vulvectomy[.]" (Docket Entry No. 12-1 at 9) However,

the severity analysis at step two, while a *de minimis* hurdle for disability claimants to clear, is not the ALJ's last chance to demonstrate consideration of the impairment or symptoms alleged to be severe. So long as the ALJ evidences his consideration of such impairments at subsequent steps of the process, any error in failing to classify the impairments as severe is harmless. See, e.g., Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). That is precisely what occurred here, as the ALJ noted in explaining his RFC finding that "[t]he claimant testified that her legs, ankles, heels, elbows, and back all bother her . . . [as does her] diabetes, vulvar cancer, and recurrent abscesses." (Tr. 17) He went on to give significant weight to such testimony, crediting it to the extent that he found plaintiff limited to a reduced range of sedentary work rather than the higher exertional levels of work which the opinion evidence supported. (Tr. 18) Thus, any error in failing to find such impairments severe is harmless.

Finally, plaintiff argues that the ALJ erred in discounting the credibility of her subjective complaints of pain, and in failing to make clear the precise weight he gave to her allegations and testimony when he referred in his rationale to "significant weight" and "partial credit" given that testimony. The ALJ's findings on these matters are set out in full below:

> The claimant testified that . . . [h]er medications make her feel very bad with dizziness and chest pain. She must elevate her legs for one-half of the day every day. She can stand or walk no more than five minutes at a time, can walk perhaps for one block, and can lift nothing. She lives with a friend and does no cooking, cleaning, or laundry. She is depressed and never goes outside. She has never abused alcohol and has not used any illicit drugs for many years.

> I give significant weight to the claimant's testimony in finding that she is limited to the reduced range of sedentary work described above. I do not fully credit claimant's testimony for several reasons. First, she has not complained of similar extreme limitations or medication side effects to her treatment providers. Second, her testimony that she cannot walk more than one block is inconsistent with her walking two miles to attend her psychological evaluation. No medical provider has indicated that claimant must elevate her feet. Finally, claimant's testimony re[garding] her drug abuse has been conflicting. She told the consulting psychologist that she stopped thirteen years earlier, she told the consulting physician that she stopped one year earlier, and she testified that she had stopped many years ago.
>
> As noted above, the consulting psychologist concluded that claimant would have mild to moderate mental limitations consistent with my residual functional capacity finding. State Agency mental health consultants opined that claimant would have only mild mental limitations. Exhibits 6F and 9F. The consulting physician limited claimant to somewhat more than sedentary work, but less than a wide range of light work. State Agency medical consultants concluded that claimant could perform medium or light work. Exhibits 4F and 8F. Giving partial credit to claimant's testimony and significant weight to the opinion of the consulting physician, I find that claimant has the residual functional capacity indicated above.

(Tr. 18) It is clear to the undersigned that the ALJ weighed plaintiff's testimony that she is essentially nonfunctional against a medical record which does not at all support that allegation, and against other factors detracting from her credibility as a witness, and appropriately resolved this conflict in the evidence in favor of the opinion evidence and clinical data, albeit with a one-level reduction in functional capacity in recognition of plaintiff's alleged pain and other symptoms in her lower extremities. Plaintiff points out the time lapse between the date of the ALJ hearing and the earlier consultative examinations which he relied upon. In particular, the consultative psychological examination which plaintiff walked two miles to attend was conducted more than two years prior to the ALJ

12

hearing, and plaintiff suggests that her hearing testimony supports that her mobility vastly decreased in the time between. However, it is plaintiff's burden to establish the disabling severity of her impairments by competent evidence, and in the absence of opinion or other evidence from plaintiff's treating providers, the ALJ properly considered the consultative report (made within plaintiff's alleged period of disability) as detracting from the credibility of her subjective complaints. It is the ALJ's province to resolve conflicts in the evidence, Baldwin v. Astrue, 2009 WL 4571850, at *4 (E.D. Ky. Dec. 1, 2009) (citing Burton v. Halter, 246 F.3d 762, 775 (6th Cir. 2001)), and in particular with regard to live witness testimony, an ALJ's credibility determination is due considerable deference on judicial review since the ALJ, unlike the Court, has the opportunity to observe the plaintiff while testifying. E.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). The undersigned finds no error in the ALJ's credibility determination here.

In sum, substantial evidence supports the ALJ's decision in this case, and that decision is therefore deserving of affirmance.

### IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections

filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 23rd day of March, 2015.

                                          <u>s/ John S. Bryant</u>
                                          JOHN S. BRYANT
                                          UNITED STATES MAGISTRATE JUDGE